591 F.2d 493
 Diane DAVIS, personal representative of the Estate of Howard
Fred Davis, Deceased, Plaintiff-Appellant,
v.
OREGON STATE UNIVERSITY, Oregon State Board of Higher
Education, Jane H. Carpenter, George H. Corey, Elizabeth H.
Johnson, Philip A. Joss, George H. Layman, Marc F. Maden,
Valerie L. McIntyre, W. Philip McLauren, John D. Mosser,
Louis B. Perry and Loran L. Stewart, each of the foregoing
Individuals and in his or her capacity as a member of the
Oregon State Board of Higher Education, Roy E. Lieuallen, in
his Individual capacity and in his official capacity as
Chancellor of the Oregon State Board of Higher Education,
Robert W. MacVicar, in his Individual capacity and in his
official capacity as President of Oregon State University,
David B. Nicodemus, in his Individual capacity and his
official capacity as Dean of Faculty of the Oregon State
University, Robert W. Krauss, in his official capacity as
Dean of the College of Science of Oregon State University,
James J. Brady, in his Individual capacity and in his
official capacity as Acting Chairperson of the Department of
Physics of Oregon State University, and Larry Schecter, in
his Individual capacity and in his official capacity as
Chairperson of the Department of Physics of Oregon State
University, Defendants-Appellees.
 No. 77-1095.
 United States Court of Appeals,
Ninth Circuit.
 Nov. 13, 1978.
Rehearing Denied Feb. 28, 1979.
 
 Don S. Willner (argued), of Willner, Bennett, Riggs & Skarstad, Portland, Or., for plaintiff-appellant.
 Al J. Laue, Asst. Atty. Gen. (argued), Salem, Or., for defendants-appellees.
 Appeal from the United States District Court for the District of Oregon
 Before VAN DUSEN,* WRIGHT and GOODWIN, Circuit Judges.
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 Davis brought suit against Oregon State University (OSU), the Oregon State Board of Higher Education, and individually-named OSU administrators requesting injunctive relief and damages for the nonrenewal of his employment contract and the denial of tenure. Davis claimed that his termination without a hearing infringed upon his liberty and property interests and was a violation of his right to procedural due process.
 
 
 2
 He appealed from a summary judgment for defendants. He died pending appeal and his widow has been substituted in her capacity as personal representative of the estate. Of the issues raised on appeal, only the question of damages for back pay remains.
 
 FACTS:
 
 3
 Davis was employed in 1968 as an associate professor in physics at OSU after teaching several years at the University of Washington. He was hired on an annual, nontenured basis by then Department Chairman MacAllister Hull, Jr. Davis alleged that Hull told him he would be granted tenure "as a matter of course" if he performed his duties "according to the professional standards of the Department of Physics." There was some evidence that Davis' expectation of probable tenure from this oral agreement with Hull conformed to the customary practice at OSU and at other institutions that hired faculty as associate professors.
 
 
 4
 Davis continued to receive annual appointments through the 1972-73 academic year. In the fall of 1972, the Physics Department Promotion and Tenure Committee considered his case, but failed to reach the required number of votes either for or against recommending tenure. Summaries of portions of Davis' personnel file were then given to him at his request.
 
 
 5
 The committee met again in May 1973 to hear material presented by Davis and again failed to muster sufficient votes to recommend either for or against tenure. Also in May, the new Department Chairman notified Davis by letter, with the approval of OSU President MacVicar, that Davis would be terminated at the end of the 1973-74 academic year. The University Review and Appeals Committee met with Davis, reviewed the case, and found no irregularity.
 
 
 6
 After this suit was filed in 1975, Davis discovered that OSU had not disclosed confidential portions of his personnel file.[1] The "secret file" contained reports of unethical conduct in the pursuit of proposals and research goals, accusations of abuse of students, and charges that he was "a hazard to other people's professional work."
 
 
 7
 Davis argued that maintenance of this "secret file" was in violation of Or.Rev.Stat. § 351.065 and Regulations of the Oregon State Board of Higher Education §§ 42.710-42.775 which require state universities to promulgate regulations permitting access to personal records. OSU did not comply until early in 1975.
 
 
 8
 Nothing in the record indicates that OSU officially stated the reasons for his termination or charged him with the actions described in the confidential file. Although Davis testified that he had made over 100 unsuccessful professional contacts to secure other employment, nothing in the record shows that OSU or any of its faculty had made derogatory comments about him, either with or without reliance on the accusations in the file.DISCUSSION:
 
 
 9
 Since the remedy for a violation of a liberty interest, such as Davis alleged here, is to "accord (the individual) an opportunity to refute the charge before University officials" in a proper hearing, Board of Regents v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972), the claim of a liberty interest violation does not survive his death. As the Court also noted in Roth, "(o)nce a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons." Id. at n.12.
 
 
 10
 Davis' claim of a property interest in continued employment does survive his death. If it could be established that Davis had a property interest in his position at OSU, his personal representative would have the right to demand a hearing to determine if he was terminated properly. If the hearing revealed he was improperly terminated, the possible remedy would be back pay until the time of his death.
 
 
 11
 Davis alleged that the "de facto tenure" rationale in Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and an oral contract between himself and then Department Chairman Hull gave him a property interest in continued employment. Because there is a dispute as to the agreement with Hull, Davis urged that the trial court improperly disposed of the issue by summary judgment.
 
 
 12
 The plaintiff in Perry was a college professor who was dismissed without a hearing after teaching in the Texas Public Higher Education System for ten years through a series of one year contracts. Sindermann alleged that, although the college had no formal tenure system, it had a "de facto tenure program" on which faculty members relied. The Supreme Court remanded for a hearing.
 
 
 13
 The fundamental distinction here from Perry is that OSU has an established system with published standards for granting tenure. Davis was aware of it. This court recently recognized this distinction from the Perry rationale in refusing to find a property interest in plaintiff's claim of "de facto tenure" when the college had a written tenure system of which plaintiff was aware. Haimowitz v. Univ. of Nevada, 579 F.2d 526 (9th Cir. 1978).
 
 
 14
 OSU's written tenure policies are also dispositive of Davis' claim of an oral contract with Chairman Hull. Even if Davis had been correct that Hull had promised him tenure "as a matter of course" if his performance continued to meet the standards of the department, he had no property interest in continued employment.
 
 
 15
 Sections of the OSU Faculty Handbook dealing with promotions, terminations, and recommendations for tenure emphasize that "(a)pproval (for tenure) is not routine or automatic at any stage of the review process." The written procedures provide that the university president makes final decisions to grant tenure. No authority to make tenure decisions is vested in a department chairman at OSU. The conversation with Hull did not establish a binding contract guaranteeing Davis tenure, nor could Davis reasonably have expected it to do so.
 
 
 16
 In a similar factual situation, this court found that assurances of tenure given to a new professor by faculty members in a position to influence the tenure decision did not create a sufficient expectation of continued employment to constitute a property interest. Seitz v. Clark, 524 F.2d 876 (9th Cir. 1975).
 
 
 17
 Seitz also cites with approval Papadopoulos v. Oregon State Bd. of Higher Educ., 14 Or.App. 130, 511 P.2d 854 (1973), Cert. denied, 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974), in which the nontenured plaintiff had much stronger facts to challenge OSU's denial of tenure decision than had Davis. In Papadopoulos, the Mathematics Department Chairman, at the time of hiring, "did at least imply, and petitioner was led to believe, that the granting of indefinite tenure would be little more than a formality in his case." 511 P.2d at 857. The permanent faculty members in the department voted overwhelmingly in favor of recommending tenure. The Dean of Science, however, made active misrepresentations about Papadopoulos to his Advisory Committee which recommended against tenure. An investigation by the Faculty Senate Committee on Review and Appeals uncovered the misrepresentations, and the committee agreed with the Mathematics Department faculty that tenure should be granted. Nevertheless, the university president denied tenure.
 
 
 18
 The Oregon Court of Appeals held that Papadopoulos as an untenured professor, had no constitutionally protected property interest beyond the duration of each one-year appointment because "under the Board's regulations petitioner could have been discharged at the end of any of those years for any reason or no reason, and he would have no right to a hearing on the grounds for his discharge." Id. at 872.
 
 
 19
 Davis raised one other argument to establish that a property interest was violated without due process, citing Young v. United States, 498 F.2d 1211 (5th Cir. 1974). Young was dismissed from the Army and Air Force Exchange Service without a hearing and other procedural safeguards in violation of the Exchange Service's own regulations promulgated to protect employees from terminations without cause. The court held that Young had a property interest in further employment to the extent that he could expect the Exchange Service to follow its own regulations before terminating him.
 
 
 20
 Application in Young here is misguided. Appellant's argument apparently is that the Oregon statute requiring the promulgation of regulations to give access to confidential files was enacted specifically to protect university employees from arbitrary firings. Since OSU did not establish nor follow appropriate regulations regarding confidential files before terminating him, Davis had a property interest in continued employment to the extent that he was entitled to a pretermination hearing.[2] We reject this argument. The statute and regulations were not designed to guarantee the procedural safeguards Davis seeks to enforce.
 
 
 21
 We do not condone the failure to allow proper access to confidential files required by statute, but the remedy does not lie in federal court under a constitutional claim. Davis may have had a separate state cause of action, but the violation of Or.Rev.Stat. § 351.065 does not constitute a property interest here.
 
 
 22
 In light of Seitz and Papadopoulos and the inapplicability of Young, we conclude that Davis did not have a property interest in his continued employment.
 
 
 23
 It is therefore unnecessary to discuss whether the proceedings before the Physics Department Promotion and Tenure Committee and the University Review and Appeals Committee met due process standards for a proper pretermination hearing.
 
 
 24
 The order granting defendants summary judgment is
 
 
 25
 AFFIRMED.
 
 ORDER DENYING REHEARING
 
 26
 The petition for rehearing is denied.
 
 
 27
 Petitioner urges that the court erred in summarily disposing of her claim based on her husband's liberty interest. We stated:
 
 
 28
 Since the remedy for a violation of a liberty interest, such as Davis alleged here, is to "accord (the individual) an opportunity to refute the charge before University officials" in a proper hearing, Board of Regents v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972), the claim of a liberty interest violation does not survive his death.
 
 
 29
 Davis v. Oregon State University, 591 F.2d 493, at 496 (9th Cir. 1978).
 
 
 30
 Petitioner alleges that, under Oregon law, the cause of action based upon the right Davis had to a pretermination hearing survived his death and that the denial of that right allows for a damage remedy under 42 U.S.C. § 1983 (1976).
 
 
 31
 It is correct that a cause of action under 42 U.S.C. § 1983 (1976) survives for the benefit of the estate if the law of the forum state creates a right of survival. Robertson v. Wegmann, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978). Petitioner maintains that Or.Rev.Stat. §§ 30.075, 115.305 preserve all causes of action, without exception.
 
 
 32
 Even if we assume that petitioner's interpretation of Oregon law is correct, she still must establish that her husband had a right to a pretermination hearing in order to sustain her § 1983 claim for damages. This is possible only if she establishes that a liberty or property interest was implicated by her husband's termination. We conclude, as we did in our opinion with respect to his alleged property interest, that the university did not deprive Davis of a protectable liberty interest.
 
 
 33
 The Supreme Court in Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), declined to find a violation of liberty interest on grounds that are applicable here:
 
 
 34
 The State in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For "(w)here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."
 
 
 35
 Id. at 573, 92 S.Ct. at 2707, (citing Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971)).
 
 
 36
 Roth suggests that liberty interests are implicated when a "charge" regarding, for example, an individual's honesty or morality has been made. Later cases indicate that a "charge" must be made publicly before a termination will infringe a liberty interest.
 
 
 37
 In Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), a policeman was terminated for reasons privately communicated to him. Even if the reasons were not well founded, the court concluded that, "(s)ince the . . . communication (of the reasons for termination) was not made public, it cannot properly form the basis for a claim that petitioner's interest in his 'good name, reputation, honor, or integrity' was thereby impaired." Id. at 348, 96 S.Ct. at 2079. Ninth Circuit decisions are in accord. E. g., Haimowitz v. University of Nevada, 579 F.2d 526, 529 (9th Cir. 1978); Stretten v. Wadsworth Veterans Hosp., 537 F.2d 361, 365 (9th Cir. 1976).
 
 
 38
 Petitioner does not allege the university made an official charge that Davis had committed the actions related in the "secret file" reports. Nor is there any evidence in the record that it made its termination decision on the basis of the reports. Even had it relied upon the reports, which for our purposes here we may assume were false, the university did not state publicly its grounds for termination.
 
 
 39
 Thus, there was no "charge against (Davis) that might seriously damage his standing and associations in his community." Roth, 408 U.S. at 573, 92 S.Ct. at 2707. The fact that he was unsuccessful in seeking other employment is immaterial. The embarrassment and reflection on professional competence that usually accompany a denial of tenure and subsequent termination are not sufficient to implicate a liberty interest. See id. at 574 n. 13, 575, 92 S.Ct. 2701.
 
 
 40
 Since Davis did not have a protectable liberty interest, he did not have a cause of action based upon a right to a pretermination hearing that could survive to his wife, even under her interpretation of Oregon law. It follows that there is no basis for her § 1983 claim.
 
 
 
 *
 Senior Circuit Judge for the Third Circuit
 
 
 [1]
 OSU does not specifically admit nor deny the existence of an undisclosed portion of Davis' personnel file. We are also unsure of the contents of this confidential file, if indeed it exists. For purposes of this appeal, however, we assume the facts are as alleged by plaintiff
 
 
 [2]
 See Note, "Protecting State Procedural Rights in Federal Court: A New Role for Substantive Due Process," 30 Stan.L.R. 1019, 1030-42 (1978) (state-enacted procedural guarantees should be deemed "property" for purposes of 14th Amendment constitutional protection)