United States Court of Appeals,

Fifth Circuit.

No. 91–5735

Summary Calendar.

Patricia A. McAULIFFE, Plaintiff–Appellant,

v.

Donald B. RICE, Secretary, Department of the Air Force, Defendant–Appellee.

July 21, 1992.

Appeal from the United States District Court for the Western District of Texas.

Before JONES, DUHÉ, and WIENER, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant Patricia McAuliffe, a former civilian employee of a non-appropriated fund instrumentality (NAFI) run by the Air Force, filed this lawsuit pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.,* seeking review of the decision to terminate her employment. Jurisdiction was predicated on the APA, §§ 702 and 703, and under 28 U.S.C. § 1331. The magistrate judge dismissed McAuliffe's case, holding alternatively that it lacked federal question jurisdiction and that the Civil Service Reform Act (CSRA), Pub.L. No. 94–454, 92 Stat. 1111 *et seq.* (1978), provides the exclusive remedial scheme for claims arising from federal personnel actions, thus preventing APA review. Agreeing with the magistrate judge's latter conclusion, we affirm the dismissal.

The scope of remedies open to federal employees for adverse employment actions was streamlined and simplified, first, by enactment of the CSRA in 1978 and second, by the Supreme Court's decision in *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). As a NAFI employee, Ms. McAuliffe was statutorily excluded from the personnel scheme newly created by the CSRA. 5 U.S.C. § 2105(c). Prior to enactment of the CSRA, the discharge of NAFI employees was held to be actionable under the APA. *See, e.g., Young v. United States,* 498 F.2d

1211 (5th Cir.1974), cited with approval in *Castillo v. Army & Air Force Exchange Service,* 849 F.2d 199 (5th Cir.1988). The question before us is whether the exclusivity of the procedures set out in the CSRA, as emphatically confirmed in *Fausto,* precludes McAuliffe's resort to APA relief here.[1] We believe they do.

First, it was never the intent of Congress that NAFI employees be entitled to the same levels of employment protection as are other federal employees. NAFI employees have been compensated from non-appropriated funds of such organizations as the Army & Air Force Exchange Service, which were set up by the armed forces to provide for the "comfort, pleasure, contentment, and mental and physical improvement of personnel of the armed forces ..." Act of June 19, 1952, Ch. 444, § 1, Public L. No. 82–397, 66 Stat. 138. Pursuant to this law, Congress determined that NAFI employees "shall not be held and considered as employees of the United States for the purpose of any laws administered by the Civil Service Commission." *Id.* Congress reflected in this legislation the concerns of the Defense Department that civilian employment in such programs must be as flexible as possible and could not be accommodated within then-existing civil service-type protections. The 1952 Act was eventually recodified at 5 U.S.C. § 2105(c), and as such was incorporated within the CSRA of 1978.

Second, the NAFI that employed Ms. McAuliffe operated under the Air Force Morale, Welfare and Recreation (MWR) Board, which promulgated its own elaborate personnel management regulations. *See* Air Force Regulation 40–7, "Civilian Personnel—Non–Appropriated Funds Personnel Management and Administration". McAuliffe's termination proceeded according to AFR 40–7, and over a course of ten months, she was provided an evaluation of her performance identifying criteria that she must attain to become a satisfactory employee; was provided notice of removal, listing examples of her unsatisfactory performance; received an opportunity to reply; appealed and was given a hearing by an examiner who recommended that the employment decision be reversed;

_____

[1]The APA excludes judicial review where so provided by statute. 5 U.S.C. § 701(a)(1).

and received two additional separate reviews by a colonel and then the commander of the Air Force Military Personnel Center, both of whom decided to sustain her removal. Apart from the potential availability of federal judicial review, McAuliffe did not lack procedural safeguards.

Third, in *Fausto,* the Supreme Court reviewed the history of the CSRA and concluded that Congress intended to supplant the hodgepodge of judicial remedies that had previously existed for various types of federal employees with the uniform gradation of review channels, culminating in some cases with appeal to the Federal Circuit. As a result, judicial review became foreclosed in certain areas where it had previously been deemed available, because Congress had determined to establish a comprehensive framework designed to "balance the legitimate interest of the various categories of federal employees with the needs of sound and efficient administration." 484 U.S. 439, 443, 445, 108 S.Ct. 668, 671, 672, 98 L.Ed.2d 830, 837, 838–39 (1988). Accordingly, in *Fausto* the Court rejected the argument that Congress's silence indicated its assent to plaintiffs' pursuit of remedies outside the CSRA. The Court held that the CSRA precluded an employee who otherwise did not qualify for "administrative and judicial review" under the CSRA from bringing a claim under the Back Pay Act, 5 U.S.C. § 5596. To allow such claims would undermine the goals of unitary decisionmaking and consistency intended by the CSRA.

In the wake of *Fausto,* the federal courts have considered the exclusivity of CSRA remedies to preclude claims by other types of employees raised under other statutes. *See, e.g., Ryon v. O'Neill,* 894 F.2d 199, 200 (6th Cir.1990) (CSRA precludes direct appeal by preference eligible employee to federal courts under APA); *Stephens v. Department of Health and Human Services,* 901 F.2d 1571, 1576 (11th Cir.), *cert. denied,* ––– U.S. ––––, 111 S.Ct. 555, 112 L.Ed.2d 562 (1990) (CSRA provides exclusive remedy for preference-eligible, as well as nonpreference-eligible, federal employees who challenge allegedly prohibited personnel practices).

Against the seeming breadth of *Fausto* and its interpretation by lower federal courts, appellant

makes two principal contentions. First, she asserts that because NAFI employees are specifically *excluded* from the panoply of procedures under CSRA, *Fausto* can have no application and cannot bar her from APA review of adverse personnel action. The argument that because NAFI employees are excluded from CSRA they are not bound by its exclusive remedial framework has some appeal until one considers the statutory reason for their exclusion. Congress deliberately exempted NAFI employees from federal civil service rules to enable the armed services to carry out the missions of non-appro priated fund organizations with the maximum possible personnel flexibility. Requiring judicial review of adverse employment decisions in addition to the elaborate procedural protections already mandated by AFR 40–7 substantially thwarts the goal of maintaining flexibility. Further, as the magistrate judge perceptively noted, to permit judicial review of NAFI personnel decisions under the APA would perversely allow them more safeguards than Congress granted more-protected classes of ordinary federal civil servants under the CSRA. We therefore interpret *Fausto* to include NAFI employees within the scope of its holding that the CSRA furnishes the exclusive set of remedies available to federal employees of all types.

McAuliffe's second principal contention is that in *Castillo,* issued shortly after *Fausto,* this court reviewed the termination of a NAFI employee under the APA. *Castillo v. Army & Air Force Exchange Service,* 849 F.2d 199 (5th Cir.1988). *Castillo,* in turn, rested on the analysis of *Young v. United States,* 498 F.2d 1211 (5th Cir.1974). *Castillo* was obviously decided without reference to *Fausto,* hence its analysis does not control this case. Further, *Castillo* 's source of authority for judicial review, *Young,* rests on the type of arguments rejected by *Fausto. Young* essentially held that because the then-modern trend in APA jurisprudence was toward broadening the availability of judicial review of federal employment decisions, a NAFI employee should also profit from the trend. *Young* equates the rights of NAFI and other federal civil service employees, but it reaches a result that we believe is at odds with *Fausto. Castillo* and *Young* are also at odds with our cases that have held the CSRA to provide the exclusive pattern for federal employee remedies. *Morales v. Department of the Army,* 947 F.2d 766, 768 (5th Cir.1991); *Rollins v. Marsh,* 937 F.2d 134, 138–39 (5th

Cir.1991). *See also, Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (holding CSRA was the exclusive remedy for a federal civil service employee who alleged that a demotion was retaliatory).

In holding that the exclusivity of the CSRA precludes application of APA judicial review of McAuliffe's termination, we note that she was not without remedy. AFR 40–7 afforded her pre-termination notice, a hearing and several levels of administrative review, all of which McAuliffe utilized. For the reasons stated above, however, the magistrate judge properly dismissed her petition for judicial review.

*AFFIRMED.*