**Hermaline KEEN**

**v.**

**Jesse BROWN, Secretary of Veterans Affairs, et al.**

**No. 3:95cv2396 (JBA).**

United States District Court, D. Connecticut.

March 21, 1997.

W. Martyn Philpot, Jr., Law Office of Martyn Philpot, New Haven, CT, for Hermaline Keen.

Carolyn Aiko Ikari, U.S. Attorney's Office, New Haven, CT, for Jessie Brown, Dept. of Veterans Affairs, Vincent Ng, Venita Godfrey.

### RULING ON DEFENDANT'S MOTION TO DISMISS (DOC. # 11)

ARTERTON, District Judge.

#### I. Introduction

Plaintiff Hermaline Keen brought suit for violations of federal employment laws against the defendants the Department of Veterans Affairs ("VA"); Jesse Brown, Secretary of the Department of Veterans Affairs; Vincent

Ng, the Medical Center Director for the Department's Medical Center in West Haven, Connecticut ("VA Medical Center"); and Venita Godfrey, Textile Care Foreman for the VA Medical Center. In particular, plaintiff alleges that the defendants violated the Family and Medical Leave Act by terminating her employment, and that in doing so they were motivated by illicit considerations of the plaintiff's race in violation of 42 U.S.C. §§ 1985 and 1986. Defendants have moved to dismiss both counts of the complaint against all defendants for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. For the following reasons, defendants' motion (Doc. # 11) is GRANTED.

## II. Facts

For the purposes of this motion, the following facts are accepted as alleged. Hermaline Keen has been employed by the VA Medical Center for 13 years in a variety of capacities, the most recent being as a laundry service worker under the supervision of Venita Godfrey. She apparently is represented by a union, the American Federation of Government Employees (AFGE). Prior to December 1994, the plaintiff notified defendant Godfrey that she was pregnant, and that she might experience medical complications as a result of her pregnancy. On two occasions in December 1994, the plaintiff experienced emergency medical problems, confirmed by her physician, and missed work as a result, once for an eight hour shift and once for half an hour. Plaintiff ceased working on December 28, 1994, and on January 5, 1995, she requested in writing a medical leave due to pregnancy complications. On January 20, 1995 plaintiff was terminated from her position ostensibly due to her failure to report to work on the two occasions in December when she reported she was experiencing medical problems as a result of her pregnancy.

The VA Medical Center justified her termination on the grounds that Ms. Keen had violated a "Last Chance Agreement" which the plaintiff had signed on October 19, 1994. The agreement required that the plaintiff provide notification and certification of any absences for emergency or medical reasons.

Under the agreement, failure to comply with the conditions would constitute just cause for discharge. Further, section G of the Agreement provided that:

> Ms. Keen hereby voluntarily waives all rights to challenge, and all procedural rights for, any removal action taken as a result of the breach of this agreement. The waived rights include, but are not limited to, the rights to appeal to the Merit Systems Protection Board, to file a grievance, or to file a civil action in any court. . . .

It appears that Ms. Keen's employee representative also signed the agreement.

Defendants move to dismiss plaintiff's entire complaint for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction. Specifically, defendants argue that: 1) plaintiff's claim must be dismissed because the plaintiff is expressly excluded from coverage of Title I of the Family and Medical Leave Act (FMLA), 2) plaintiff does not have a private right of action under the FMLA as a federal employee, and 3) Title VII provides the exclusive remedy for a federal employee who suffers racial discrimination, thus barring plaintiff's claim under §§ 1985 and 1986. Plaintiff alleges that this Court can hear her claim under Title II of the FMLA, but has withdrawn voluntarily the remaining claim.

## III. Discussion

### 1. Standard

A motion to dismiss pursuant to Rule 12(b)(1) must be granted if the plaintiff fails to establish jurisdiction, while dismissal under 12(b)(6) for failure to state a claim is appropriate "only when, construing the allegations in the complaint in a light most favorable to plaintiff, it appears beyond doubt he can prove no set of facts in support of the claim that would entitle him to relief." *Patton v. Dole*, 806 F.2d 24, 30 (2d Cir.1986). Though the plaintiff and the defendant use the terms "subject matter jurisdiction" and "cause of action" almost interchangeably, it seems clear that the dispositive issue is whether plaintiff has a private right of action

to enforce the Family and Medical Leave Act (FMLA) in federal court.

2. *The Plaintiff does not have a right of action under Title II of the Family and Medical Leave Act.*

i) Statutory Language and Structure:

 Plaintiff initially brought her action under Title I of the FMLA, 29 U.S.C. §§ 2601 *et seq.* However, the enforcement remedies in Title I apply only to "eligible employees." 29 U.S.C. § 2617. Plaintiff concedes that she does not fall within this definition, and that she is covered instead by Title II, codified as 5 U.S.C. §§ 6381 *et seq.*, which guarantees the same substantive rights to federal employees. (Mem. Opp. at 4). Nonetheless, plaintiff asserts that read in a light most favorable, her complaint does in fact state a claim under the FMLA. Therefore, the court must determine whether the plaintiff has a cause of action under Title II of the FMLA.

The first step in interpreting a statute is to look at its plain and ordinary meaning. *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). On its face, the statute does not provide a private right of action to federal employees to enforce the provisions of the FMLA. Title I and Title II parallel each other in terms of the substantive rights provided for employees. Both titles provide 12 weeks unpaid leave for the birth or adoption of a child, in order to care for a family member, or because of a serious health condition that makes the employee unable to perform the functions of his or her position. 5 U.S.C. § 6382(a)(1) (Title II); 29 U.S.C. § 2612 (Title I). Both titles require the continuation of health insurance, and allow an employer to require medical certification of the need for leave. However, the two provisions differ in one critical respect: while Title I provides for a private right of action for employees that suffer violations under the Act, Title II includes no such enforcement remedy. *Compare* 29 U.S.C. § 2617 (Title I) *with* 5 U.S.C. § 6381, *et seq.* (Title II).

The language of the implementing regulations also highlights this difference. The regulations promulgated by the Office of Personnel Management (OPM) pursuant to Title II state that:

"This subpart provides regulations to implement sections 6381 through 6387 of title 5, U.S.Code. This subpart must be read together with those sections of law. Sections 6381 through 6387 ... provide a standard approach to providing family and medical leave to Federal employees by prescribing an entitlement to a total of 12 administrative workweeks of unpaid leave...."

5 CFR § 630.1201. These regulations do not reference any means of enforcement, while the regulations promulgated by the Department of Labor implementing Title I include a subpart entitled "What Enforcement Mechanisms Does FMLA Provide?" 29 CFR § 825.400. This provision outlines the options for employees who believe their rights have been violated, and includes "(1) Filing, or having another person file on his or her behalf, a complaint with the Secretary of Labor, or (2) Filing a private lawsuit pursuant to section 107 of FMLA." *Id.*

The language used in the Federal Register further supports the conclusion that the statute does not provide an explicit private right of action for federal employees. The interim regulations issued by the Office of Personnel Management (OPM) state that "[i]f an employee believes an agency has not fully complied with the rights and requirements provided under sections 6381 through 6387 of title 5, United States Code, and the regulations set forth below, the employee may file a grievance under an agency's administrative grievance procedures or negotiated grievance procedures." 581 Fed.Reg. 39,602.

It is this statutory and regulatory language on which the two district courts that have addressed this question have relied. In *Sutherland v. Bowles,* after a summary discussion of the wording of the statute, the Eastern District of Michigan stated that "[b]ecause Title II does not create a private right of action or waive federal sovereign immunity, Sutherland's suit must be dismissed if he is covered by Title II rather than Title I." 1995 WL 367937 *2. The Eastern District of North Carolina similarly re-

lied on the statutory language when it adopted a Magistrate's recommendation that a civilian Marine Corps employee was excluded from the coverage of Title I, and thus dismissed his complaint. *Mann v. Haigh,* 891 F.Supp. 256, 258 (E.D.N.C.1995).

ii) Implied right of Action:

In the absence of an express right of action, the focus then turns to whether the court should imply a cause of action for federal employees under the statute. Plaintiff notes that "remedial statutes are to be liberally construed to effectuate their purposes." *Parise v. Riccelli Haulers, Inc.,* 672 F.Supp. 72, 74, (N.D.N.Y.1987). She argues that the FMLA should be liberally interpreted in favor of protecting employees who need family or medical leave, and that the legislative history supports the contention that Congress intended to provide federal employees with a right of action. While the remedial aspects of the FMLA are apparent, an examination of the legislative intent reveals the opposite conclusion.

In *Cort v. Ash,* the Supreme Court adopted the analytical framework of section 874A of the Restatement (Second) of Torts in addressing the question of whether courts should imply a private right of action under a particular statute. This four-part test requires balancing the following factors:

> i) whether the plaintiff is a member of the class for whose especial benefit the statute was enacted; ii) whether there is any indication of legislative intent, implicit or explicit, to create a remedy or to deny one; iii) whether private enforcement is consistent with the underlying purposes of the legislative scheme, and iv) whether the cause of action is one traditionally relegated to state law.

422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975). The Supreme Court has since shifted its analysis by emphasizing the centrality of the second factor: whether Congress intended for there to be such a private enforcement mechanism. Without overruling *Cort,* for all practical purposes the Supreme Court has adopted Justice Powell's dissenting views in that case, and now focuses on the question of congressional intent. *See*

*Cannon v. Univ. of Chicago,* 441 U.S. 677, 730, 99 S.Ct. 1946, 1974–75, 60 L.Ed.2d 560 (1979); *Health Care Plan, Inc. v. Aetna Life Ins. Co.,* 966 F.2d 738, 740 (2nd Cir.1992). Therefore, the task before the court is to discern whether Congress intended that federal employees like the plaintiff be able to enforce their rights in federal court.

As discussed above, Title I is virtually identical to Title II save the inclusion of an enforcement provision in the former. As the defendant points out, where two sections of the same statute contain different language, federal courts have traditionally honored the canon that Congress intended the difference. *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300–01, 78 L.Ed.2d 17 (1983). Further, the legislative history of the FMLA does not support the contention that Congress intended to provide a private cause of action to federal employees. In her objection, Plaintiff cites to a section of the Senate report discussing the civil enforcement mechanisms. S.Rep. No. 103–3, at 2 (1993), U.S.Code Cong. & Admin.News 1993, at 3. That report states that "rights established under the FMLA are enforceable through civil actions." That paragraph continues, however, with *"Under section 107* [of Title I] a civil action for damages or equitable relief may be brought against an employer in any federal or state court of competent jurisdiction...." *Id.* In addition, the entire report begins "Title I of S.5, the Family and Medical Leave Act of 1993, makes available to eligible employees up to 12 weeks of unpaid leave per year...." In short, this section of the Senate Report, including the language cited by plaintiff, refers to the private right of action created in Title I for "eligible employees," a group to which the plaintiff concedes she does not belong.

The House Report specifically discussing Title II, issued by the Committee on Post Office and Civil Service, provides further guidance. Under Title II, OPM is required to prescribe regulations necessary for the administration of leave programs.

> Generally, the regulations should be consistent with the regulations issued by the Secretary of Labor pursuant to this Act to the extent that the language of title II

conforms to the language of title I and title I does not otherwise conflict with Federal civil service law and its administration. . . . H.R.Rep. No. 8(II), 1993 WL 30780 (Leg. Hist.), *51. The same House Report, however, recognized the different nature of the workplaces regulated by Title I and Title II.

Given this difference, and in light of the intent of this legislation to assist employees, the committee sees no inconsistency in OPM issuing regulations under Title II that differ from those issued by the Secretary of Labor where the effect of OPM's regulations is to better enable Federal employees to benefit from the leave provided by this legislation. *The committee believes that the provisions of Title II affecting Federal employees can be adequately enforced using existing grievance procedures established by a collective-bargaining agreement or by agency management.*

H.R.Rep. No. 8(II), 1993 WL 30780 (Leg. Hist.), *51 (emphasis added.)

In sum, the House Report that specifically addresses the FMLA section applicable to federal employees clearly indicates that Congress did not intend to provide a private enforcement mechanism for such employees. The Court concludes that the differences in the statutory and regulatory language were intentional, and the remedies authorized for one group of employees under Title I should not be extended by implication to Title II employees.

Plaintiff relies on the fact that the enforcement scheme for the FMLA was modeled on the Fair Labor Standard Act (FLSA), and argues that the fact that the FLSA includes a cause of action against the federal government justifies implying such a cause of action in the context of the FMLA. The discussion of FLSA in the legislative history, however, again refers only to Title I. The Senate Report, in a section entitled "Civil Enforcement" states that "S.5's enforcement scheme is modeled on the enforcement scheme of the FLSA, which has been in effect since 1938. . . ." This paragraph is immediately followed by the paragraph cited above: *"Under section 107* a civil action for damages or equitable relief may be brought against an employer. . . ." S. Rep. 103–3, at 35 (1993), U.S.Code Cong. & Admin.News, at 3, 37 (emphasis added). The section following discusses the relief available under the FMLA, stating "[t]he relief provided . . . also parallels the provisions of the FLSA. *Section 107* provides for injunctive and monetary relief for violations of the Act." *Id.* (emphasis added).

The most crucial difference between the FLSA and the FMLA, however, concerns the respective treatment of sovereign immunity. While the 1974 FLSA amendments specifically waived the Federal government's immunity from suit for wage claims, there is no such express waiver of sovereign immunity apparent in the FMLA. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 476, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994). The defendant notes that historically the Supreme Court has held that "any waiver of the national government's sovereign immunity must be unequivocal." *United States Department of Energy v. Ohio,* 503 U.S. 607, 613, 112 S.Ct. 1627, 1633, 118 L.Ed.2d 255 (1992). The legislative history and the language of the statute here do not present such a clear showing as demanded by the precedent of the Supreme Court.

The inadequacies of plaintiff's argument can be demonstrated by comparing the FMLA with the FLSA and Title VII. In 1974, Congress amended the FLSA to make its wage and hour requirements applicable to the Federal government. Pub.L. 93–259. These amendments redefined "employer" under the FLSA to include a public agency, and deleted text in the original statute which specifically excluded the United States from that definition. Subsec. (d) Pub.L. 93–259 § 6(a)(1), codified at 29 U.S.C. § 203(e)(2). Further, the same act amended 29 U.S.C. § 216(b), which provides for damages, a right of action and attorney's fees and costs for violation of the FLSA, to allow suit against any employer (including a public agency) in any Federal or state court. Subsec. (b) Pub.L. 93–259 § 6(d)(1).

A similar pattern can be seen in the amendments to Title VII. 42 U.S.C. §§ 2000e

*et seq.* When Title VII was enacted, federal employees were not protected from discrimination. As with the Fair Labor Standards Act, the federal government was specifically excluded from the definition of employer. In 1972, the Equal Employment Opportunity Act amended Title VII to create a private right of action for federal employees to challenge discriminatory practices in federal employment, upon exhaustion of their administrative remedies. 42 U.S.C. § 2000e–16(c).

No such waiver of sovereign immunity is present in the FMLA. In addition, there is minimal evidence of congressional intent to create a private right of action for federal employees; rather, there is evidence of congressional intent to limit federal employees to their administrative remedies. Such factors compel the conclusion that Ms. Keen does not have a private right of action under the Family and Medical Leave Act to challenge the VA Medical Center's actions in this case.

3. *In the absence of a right of action under Title II, Ms. Keen is precluded from bringing her FMLA claim under the Administrative Procedures Act, as the Civil Service Reform Act provides the exclusive remedy to challenge an agency action.*

██ Plaintiff asserts, in the alternative, that the Administrative Procedures Act (APA) provides a right of action for her to challenge her termination. Section 702 of that statute states that "[a] person suffering a legal wrong because of agency action ... is entitled to seek judicial review thereof." 5 U.S.C. § 702.

As the FMLA is a relatively new statute, case law provides no definitive answer to the question of whether a federal employee can challenge a termination in violation of the FMLA under the Administrative Procedures Act. The defendant argues that because the Civil Service Reform Act (CSRA) provides the exclusive administrative and judicial fora in which removed federal employees like the plaintiff may challenge their termination, review under the APA is precluded. The CSRA allows federal employees to challenge adverse employment actions by agencies through administrative grievance procedures, followed by an appeal to the Merit Systems Protection Board or a grievance arbitration, with judicial review in the Federal Circuit. 5 U.S.C. § 1101 *et seq.*

The defendant's reasoning follows that of the Eastern District of North Carolina, which ruled in *Mann v. Haigh* that the APA did not confer subject matter jurisdiction over a federal employee's FMLA claim. *Mann v. Haigh,* No. 4:95CV107–H–3, slip op. at 3, —— F.Supp. ——, —— [1996 WL 888184] (E.D.N.C. May 17, 1996). The *Mann* court cited a Fifth Circuit interpretation of *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), in *McAuliffe v. Rice,* 966 F.2d 979 (5th Cir.1992), as support for its ruling that the CSRA (or agency review procedures for employees outside of CSRA protection) provides the exclusive remedial scheme for claims arising from federal personnel actions, thus preventing APA review of FMLA violations. *Mann,* Slip op. at 3, at ——.

In *United States v. Fausto,* the Supreme Court determined that a non-veteran federal employee who had exhausted his administrative grievance procedures and was not provided further avenues for relief or appeal under the CSRA did not have a right to bring an action in federal court under the Back Pay Act for an alleged prohibited personnel practice. The Court considered the evolution of the civil service system in this country, and the variety of laws regulating the various aspects of that system prior to passage of the Act:

> Congress responded to this situation by enacting the CSRA, which replaced the patchwork system with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration.

*United States v. Fausto,* 484 U.S. at 445, 108 S.Ct. at 672. With this history as a backdrop, the Court reasoned that to allow a "non-preference" employee (a non-veteran employee) greater access to judicial review under the Back Pay Act than preferred employees received under the CSRA would defeat the purposes of that Act. Following this

logic, the *Mann* court, and the defendants here, assert that as the CSRA is the exclusive administrative and judicial remedy for federal employees challenging adverse employment actions, and as the APA excludes judicial review where provided for under another statute, plaintiff is barred from seeking APA review. *See* 5 U.S.C. § 701(a)(1).

Further case law buttresses this contention that the broad scope of CSRA preemption bars Ms. Keen's recourse to the APA. In *Bush v. Lucas* the Supreme Court concluded that even constitutional claims were preempted by the CSRA scheme of appeals and judicial review.

> Because [claims that a federal employee's First Amendment rights are violated by superiors] arise out of the employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, we conclude that it would be inappropriate for us to supplement the regulatory scheme with a new remedy.

*Bush v. Lucas,* 462 U.S. 367, 368, 103 S.Ct. 2404, 2406, 76 L.Ed.2d 648 (1983). Similarly, Ms. Keen's claim that her employer violated a federal statute arises out of the employment relationship. This logic is supported by the Court's suggestion five years later in *Fausto* that the CSRA provides the exclusive remedy for federal employees challenging agency actions. The decisions in *Fausto* and *Lucas* are in accord with the conclusions of every circuit court that has addressed this issue. *See McAuliffe v. Rice,* 966 F.2d 979 (5th Cir.1992); *Ryon v. O'Neill,* 894 F.2d 199 (6th Cir.1990); *Schrachta v. Curtis,* 752 F.2d 1257, 1260 (7th Cir.1985); *Veit v. Heckler,* 746 F.2d 508 (9th Cir.1984); *Stephens v. Department of Health and Human Services,* 901 F.2d 1571 (11th Cir.1990); *Carducci v. Regan,* 714 F.2d 171 (D.C.Cir.1983). Though the Second Circuit has not ruled on the precise issue of whether the CSRA preempts an APA claim, it has determined that the CSRA limits unionized federal employees' access to the courts to resolve FLSA claims, when such claims are subject to a negotiated grievance procedure. *O'Connell v. Hove,* 22 F.3d 463 (2nd Cir.1994). The only district-

court opinions reviewed by this Court allowing a right of action to challenge a federal agency's personnel decision under the APA pre-date *Fausto* and *Lucas. See Scheunemann v. United States,* 358 F.Supp. 875 (N.D.Ill.1973); *Doe v. United States Civil Service Commission,* 483 F.Supp. 539 (S.D.N.Y.1980).

Plaintiff has not addressed the question of whether the CSRA preempts her APA claim. Rather, plaintiff relies on the initial decision of the District Court in *Mann v. Haigh,* 891 F.Supp. 256 (E.D.N.C.1995). At that stage, the Eastern District of North Carolina granted without prejudice a motion to dismiss a federal employee's FMLA claim, with the understanding that the plaintiff could return to federal court under the APA after he had exhausted his administrative remedies. *Id.* at 263. As discussed above, however, upon the plaintiff's return the court determined that the CSRA was the employee's exclusive remedy for an alleged FMLA violation by a federal employer. *Mann v. Haigh,* No. 4:95CV107–H–3, slip op. at 3 (E.D.N.C. May 17, 1996). The decision of the district court is not controlling on this Court, yet the consistent rulings of the circuit courts persuade the Court that Ms. Keen's APA claim is preempted by the CSRA.

In spite of this countervailing authority, plaintiff argues that this Court can hear her claim under the APA. Under the Administrative Procedures Act, judicial review is only available if an individual has no other adequate remedy to challenge a final agency action. 5 U.S.C. § 704. Therefore, a plaintiff must exhaust his or her internal administrative remedies before seeking judicial review in federal court. *See McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992). In the case at bar plaintiff asserts that she has effectively exhausted her administrative remedies by waiving her appeal rights in the last chance agreement. Even if this Court were to agree with the plaintiff's theory that a waiver is equivalent to administrative exhaustion for the purposes of the APA, that still does not address the preemptive effect of the CSRA. Further, the last chance agreement also waives any right to "file a civil action in any court or other body of

competent jurisdiction." Though the defendant has not raised the affirmative defense of waiver, any use by the plaintiff of the agreement is a double-edged sword.

It may appear that plaintiff is in a Catch–22: she has no private right of action on the one hand, and under the Last Chance Agreement, she has waived her right to administratively challenge her termination. Though the posture of this case initially suggests such an inequity, that may not be the reality. Plaintiff still has the right to appeal her termination, through administrative channels, on the grounds that FMLA-qualified leave should not constitute a breach of the agreement. The Federal Circuit has concluded that the MSPB has jurisdiction to review an agency determination that an individual actually did violate such an agreement. *Stewart v. United States Postal Service*, 926 F.2d 1146 (Fed.Cir.1991). Therefore, it would appear that plaintiff is not left entirely without recourse.

### IV. Conclusion

For the reasons stated above, defendants' motion to dismiss (Doc.# 11) is GRANTED. The clerk is instructed to close the case.

IT IS SO ORDERED.